## Continental Realty Company v. Mowbray & Robinson Company and O. H. Swango.

(Decided February 20, 1920.)

## Appeal from Breathitt Circuit Court.

1.  Vendor and Purchaser—Quantity, Boundaries and Location.—An attempt by a vendee to convey more property than embraced in his deed is futile, because in the absence of other conveyances he could not in any wise strengthen or enlarge the title he has received.

2.  Estoppel—Questions Judicially Settled.—A question which has been judicially determined by a court of competent jurisdiction is conclusively settled so far as it relates to the party in suit or any one in privity with him, and is an estoppel to litigating in future actions such questions between the parties and their privies.

3.  Damages—Action for Value of Timber Taken.—In a suit to recover the value of timber taken from a described boundary, upon examination of the evidence it appearing that plaintiff had both a record and possessory title to the land involved, it was entitled to a judgment for tne timber taken.

4.  Damages—Action for Value of Timber Taken.—Where parties to a suit have agreed among themselves as to the measure of damages applicable to certain logs taken from plaintiff's property, the parties will be relegated to the value of the logs as fixed in said agreement and plaintiff's recovery will be measured accordingly.

MARTIN T. KELLY for appellant.

GEO. W. FLEENOR, SPENCER & MOFFETT, CHESTER GORLEY, W. L. KASH, EDW. C. O'REAR and J. C. JONES for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Claiming to be the owner of certain lands in Breathitt county on the waters of Smith's branch of the South fork of Quicksand creek, plaintiff (appellant) brought this action to recover the possession of certain lumber alleged to have been wrongfully taken therefrom by defendants (appellees).

The tract described in the petition is of considerable acreage, and contains several exclusions. Upon said land and outside of the exclusion it is alleged defendants cut 2,100 trees of various kinds, caused same to be sawed into 4,800 logs and converted into 975,000 feet of lumber, board measure.

Separate answers put in issue the allegations of the petition, affirmatively alleging ownership and possession of a described boundary which it admitted conflicted with the land claimed by plaintiff, that the timber referred to was taken and removed from the land as described in the answers, and that the nature of the property had been wholly changed and its value greatly increased. Defendant, Mowbray & Robinson Co., alleged the purchase in good faith of 2,837 logs from its co-defendant.

Both parties claim by record and possessory title. Plaintiff filed an amended reply, pleading that the defendants were privies to the defendant in the suit of Combs v. Tharp and were bound by the judgment entered therein adjudging title in Combs to the identical property here involved.

Plaintiff claims under patent No. 42,503, issued to William M. Combs, January 7, 1870, for 200 acres, and by satisfactory chain of title thereafter. The exclusions, five in number, are for fifty acres each, and to the extent the Combs boundary laps thereon, plaintiff has no title; this is conceded.

Defendant claims under deeds from W. L. Kash and Campbell Tharp and others, also under title bond from John D. Frances to L. O. Tharp.

In March, 1900, Fleming Tharp and Campbell Tharp, their respective wives joining therein, for a recited consideration paid, conveyed to William M. Combs, the five fifty acre tracts subject to exclusions, stating in said deed:

"It is understood that the said Fleming Tharp has heretofore acquired all the right title and interest that descended from Oliver Tharp, to him, Joel Tharp, William Tharp, Jack Tharp, and Leander Tharp in and to said land, they being children and heirs at law of the said Oliver Tharp, who owned said land at the time of his death, and that he by this deed convey to the said Wm. M. Combs all the right, title and interest in said land, the same being an undivided four-fifths interest in same."

In an order entered March 13, 1901, in the suit of Fleming Tharp v. Campbell Tharp it is adjudged:

"That the defendant, Joel Tharp, Sarah Tharp, Jerry Campbell, Armina Campbell, William Tharp, Jesse Tharp, and Matilda Tharp in her lifetime signed acknowledged and delivered to Fleming Tharp, a deed by which they, for and in consideration of $264.25 paid to them, sold and conveyed to Fleming Tharp all their right title and interest and claim in and to the land hereinafter described."

And that said deed having been lost and Wm. M. Combs since its execution having purchased Fleming Tharp's interest in said land, is entitled to a conveyance thereof, and the court's commissioner was ordered to convey the land (the five fifty-acre tracts subject to exclusion) to said Combs.

The order further recited the execution of the deed and the certification of same to the clerk of the Breathitt county court for record.

Having received, as he thought, a conveyance of the five excluded tracts from the heirs of Oliver Tharp, in whom the title to same was vested, William M. Combs, conveyed same to plaintiff. Thereafter, Campbell Tharp, Henry Tharp, by his next friend and Bertha Miller, by her guardian, instituted suit against the Continental Company seeking a sale of the five fifty-acre tracts, and for a proper division of the proceeds. It was alleged that Oliver Tharp died intestate in August, 1897, the owner of the aforesaid five tracts containing, outside certain exclusions, a total of about one hundred and fifty acres.

The petition after naming the heirs of said decedent, being his eight children, alleged the acquisition by the Continental Company of the respective interests of six of the children, and as such it was a tenant in common with Campbell Tharp and Henry Tharp, the two other children. As to Bertha Miller, it was alleged the company was indebted to her in the sum of twenty dollars balance on the purchase price of her interest.

The Continental Company vigorously defended this suit. Under the final judgment Campbell Tharp and Henry Tharp were adjudged each an undivided one-eighth interest in the land, the Continental Company being the owner of the remaining six-eighths. Bertha

Miller's claim was dismissed, and a sale of the property ordered. The property was sold and conveyed by the master commissioner to W. L. Kash, and in said deed it is recited:

"Being the same land one-fourth of which was inherited by the said Campbell Tharp and Henry Tharp from their father Oliver Tharp, and three-fourths being purchased by the Continental Realty Company, from the Little Coal and Coke Company by deed bearing date the 20th day of August, 1903, and recorded in deed book 20, page 99, Breathitt county court clerk's office."

In the deed from W. L. Kash to Ova H. Swango, in 1911, the property is referred to as:

"Being the same land this day conveyed to the said W. L. Kash, by master commissioner of the Breathitt circuit court and recorded in deed book 36, page 236, Breathitt county court clerk's office."

Then follows this statement:

"The same land is differently described as follows:"

The description of the property here given in one tract, is that found in the title bond from Frances to Tharp hereinafter noted.

The exclusions from this description are the same as found in the commissioner's deed.

In passing we might say that any attempt by Kash to convey more property than embraced in the commissioner's deed was futile unless he had received title to additional land from other sources, and this he has not shown. As we see it, defendant's title is in no wise strengthened, nor is the area of the five exclusions enlarged by the additional description in the deed to Swango. Then, too, an examination of the maps filed by both parties shows that the five tracts are not contiguous and therefore could not be covered by a single description, if such it was sought to do. As to any land outside the exclusions we will see later.

Defendants next claim under a quit claim deed of July, 1914, from Campbell Tharp and others to O. H. Swango. The property in this deed accords with the description in the Frances title bond. The grantees are all the children of Oliver Tharp, except Fleming Tharp and Tilda Tharp, the latter, then deceased, being the mother of Bertha Miller, hereinabove referred to. The conveyance on behalf of Henry Tharp was by his committee.

In the habendum clause of the deed it is provided:

"And it is further understood that the said first party only convey and quit claim their separate and several interests in and to said described tract of land and do not bind themselves to warrant the title to same; this being the same land inherited by said first parties from their father, Oliver Tharp, who departed this life on the—day of——189—."

January 6, 1897, William M. Combs, brought suit against Campbell Tharp and Joel Tharp alleging that he was the owner of the tract of land on Smith's branch of South Quicksand creek, including all the land above what is known as the lower end of the Oliver Tharp farm, except the Oliver Tharp farm embraced in the five fifty-acre patents.

It was further alleged the defendants were wrongfully cutting timber outside the area of the five tracts; damage was asked for the timber taken and for a restraining order preventing a repetition of similar acts.

After denying the allegations of the petition, Campbell Tharp asserted title to two tracts of land of eighty-six acres each, which he purchased from his father in 1888, further alleging that his father some twenty odd years previously purchased a tract of land, describing it, and being the description of the 250 acres found in the Frances title bond; that there was a conflict in the boundaries as claimed by the respective parties, and that the description as given in the answer was the correct one and "includes more land than is given in the description of said farm by plaintiff." It was also alleged that Oliver Tharp lived upon said land and had possession thereof for more than twenty years and that in 1888 he sold the first two tracts mentioned to Campbell Tharp, who took possession of same, and that the timber was taken from the first tract mentioned.

This case proceeded to judgment, the court decreeing that defendants had failed to show adverse possession of any land outside of the five patents, and that Combs was the owner of so much of a described boundary as did not conflict with the said five patents. The description of the land adjudged to Combs is almost identical to that found in the grant from the Commonwealth; the slight discrepancy is due doubtless to the copyist. The surveyor says it compares exactly.

It might be well to note here that in September, 1892, Oliver Tharp and wife conveyed to Joel Tharp fifty acres of the Oliver Tharp farm.

The Frances title bond. With the deposition of O. H. Swango is filed what purports to be a contract dated February 14, 1877, wherein John D. Frances, for a valuable consideration, agrees to convey to L. O. Tharp (Oliver Tharp) a tract of 250 acres, more or less, and which description is the same as the additional boundary contained in the deed from Kash to Swango. This bond for deed makes no mention of any exclusions. While claiming all the land described in the bond, the defendant Swango admits there are certain exclusions therein to which he does not claim title; for example, the land owned by George Allen and Jesse Tharp. It will be remembered that in the deed from several of the Tharp heirs to Swango, dated July 20, 1914, the description is that of the Frances contract and contains no exclusions.

Not only did Oliver Tharp in September, 1892, convey a portion of his farm to Joel Tharp, but in August, 1891, he conveyed to Campbell Tharp two tracts of 86 acres each. It is testified that the land from which the timber was cut as involved in the present appeal, is the same as that embraced in the deed to Campbell Tharp, and the same as adjudged to Combs in his suit versus Campbell Tharp, &c. Oliver Tharp having parted with any title he may have had in or to said land (exclusive of the five tracts), he was not vested with any interest therein at the time of his death, and the attempt of his heirs to pass title to Swango was nugatory.

The question of title was settled by the judgment in Combs v. Tharp, adjudging that Combs was the owner of all the land described in his patent, in so far as it did not conflict with the five tracts mentioned. There has been no modification of that judgment. No appeal therefrom. It is conclusive between the parties and their privies. As said in Perry v. Eagle Coal Co., 170 Ky. 824, 186 S. W. 875:

"It is elementary that a question, which has been judicially determined in a court of competent jurisdiction, is conclusively settled, so far as it related to the parties to the suit or any persons in privity with them, and it is an estoppel to litigating again in a future action such question between the parties or their privies in any court."

Defendants do not claim title through Combs. A study of the record convinces us they have title only to the five fifty-acre tracts, subject to certain exclusions. Plaintiff it seems has abundantly established its title and the right of possession to the land involved, about seventy-five acres, both by record title and by possession adverse to defendants' claims.

Neither under the Frances title bond, the deed from Kash to Swango, nor the deed of July 20, 1914, from the several heirs to Swango, have defendants shown any right to the land in controversy. The judgment in Combs v. Tharp, while binding only upon the parties and their privies, is persuasive, at least a circumstance to be considered on the question of title, and adds strength to plaintiff's claims. James Russell (Oliver Tharp's vendor), in the case of Combs v. Tharp, testified that the land consisted of five fifty-acre patents, and this is all he sold to Frances; that he made Oliver Tharp a deed to the land, he had given title bond to Frances, and when Tharp presented this bond he made deed to Tharp, conveying the five patents. His recollection is that Tharp only claimed to have bought the five patents; William H. Combs was claiming the land on the head of the branch at the time the deed was made to Tharp. He says further: "It was my intention to only sell what I bought which was the five patents."

The deed itself, dated July 18, 1878, after giving the beginning corner, says the conveyance includes the five fifty-acre patents.

The same witness testified on the present trial, but by reason of the infirmities of old age it is manifest his memory is not so good as when he gave his former testimony.

We have dealt thus at length with the evidence because the sole question for our decision is the sufficiency of the proof to support the verdict. Though mindful of the effect to be given the verdict of a properly instructed jury, we think the verdict is flagrantly against the evidence, and for this reason a new trial must be ordered. The conclusion reached renders unnecessary any comment upon the instruction given by the lower court.

Defendant makes the point that the motion for a new trail was not filed in time, and the judgment was irregularly entered, but these apparent errors are thoroughly and satisfactorily explained in the supplemental record,

the motion to file which was sustained after defendant's brief was filed.

Defendants' title to and possession of the five fifty acre tracts is not disputed and it was only necessary that plaintiff prove the timber was cut from the land described in the Combs patent. This plaintiff has conclusively shown and upon a new trial, the evidence being the same, the court will so instruct the jury, leaving for their consideration only the amount to which plaintiff is entitled under the pleadings as amended.

Both parties claim title to the land in dispute by adverse possession. The evidence for defendants does not show the character and extent of possession necessary to satisfy the statute; on the other hand, plaintiff's evidence satisfactorily shows possession on its part or those under whom it claims for a considerable period beyond fifteen years, in addition to its established record title.

On the question of the measure of damages it is urged by plaintiff that the defendants being wilful trespassers the timber was at all stages of the conversion plaintiff's property, and they ask a recovery upon this basis.

In the second amended petition it is alleged that the timber at the time and place it was cut and removed was of the reasonable value of $4,000.00. That the logs into which it was cut at the time of the sale to Mowbray & Robinson Co. were worth $8,000.00, and supplementing the prayer of the original petition, in the event it could not recover for the timber in its manufactured state, it asked a recovery in the sum of $8,000.00.

The measure of damages in cases similar to this has been the subject of much litigation in the several states, and the courts are not in accord as to the rule applicable under a given state of case. However, it would seem unnecessary for us to enter into a discussion of this question because the parties have settled it themselves, and fixed the measure of damages governing this case.

This suit was filed July 29, 1914. On October 5, 1914, the following writing was executed:

"I hereby agree for the Continental Realty Company that the logs now on Smith's branch which were cut by O. H. Swango, &c., may be taken under his contract with Mowbray & Robinson Company may be hauled by them and cut into lumber. They to keep accurate account of the number of logs and the measurement thereof, and

they to hold the money for same until the suit now pending styled Continental Realty Company v. Mowbray & Robinson Company and O. H. Swango pending in the Breathitt circuit court is terminated. The money then to be paid to whomsoever the same is adjudged to.

"This October 5, 1914.

"MARTIN T. KELLY,

Agent for Continental Realty Co.,"

This agreement renders unnecessary any comment by us, as to the extent of plaintiff's recovery. The agreement of the parties will be sustained and the basis fixed by them will govern the amount to which plaintiff is entitled for all timber taken from its property..

Much stress is placed by defendant upon the insufficiency of the testimony of appellees' surveyor, and his alleged failure to definitely locate certain corners and lines of the Combs patent; much of their brief is devoted to this subject. No useful purpose will be served by entering into a detailed discussion of this testimony. From what we have said before it is clear to our mind the timber was cut from property owned by plaintiff.

Upon a return of this case, the evidence being the same, the court will instruct the jury to find for plaintiff, the measure of its recovery being that fixed in the aforesaid agreement.

Wherefore the judgment is reversed for further proceedings consistent herewith.